DENNIS R. BAGNERIS, SR., Judge.
L This appeal results from an election contest suit. The appellant, Lionel Lon Burns, appeals the trial court’s judgment that granted the petition of plaintiff, Anthony Russo, to disqualify Mr. Burns as a candidate for the position of Orleans Parish District Attorney. For the reasons that follow, we vacate the judgment and remand the matter to the trial court for further proceedings consistent with this opinion.
FACTUAL AND PROCEDURAL HISTORY
On August 20, 2014, Mr. Burns filed a Notice of Candidacy (Notice) form to declare his candidacy for the office of Orleans Parish District Attorney. The signed and notarized Notice included the representation that:
If I am a candidate for any office other than United States senator or representative in congress, that for each of the previous five tax years, I have filed my federal and state income tax returns, have filed for an extension of time for filing either my federal or state income tax return or both, or was not required to file either a federal or state income tax return of both.
Thereafter, on August 29, 2014, Mr. Russo filed his petition to object to Mr. Burns’ candidacy. Mr. Russo contended that a public records request to the 12Louisiana Department of Revenue revealed that the department had no record of a Louisiana individual income tax return for Mr. Burns for tax years 2010, 2011, 2012, and 2013. Consequently, he alleged that Mr. Burns had falsely certified that he had filed his federal and state income tax returns for the previous five years, and sought to have him disqualified, a sanction allowed by La. R.S. 18:494(A).[2]
Mr. Russo served the petition on Mr. Burns through his statutory agent for service of process, Arthur A. Morrell, the Clerk of Criminal District Court, the official before whom Mr. Burns qualified his candidacy for district attorney.[3] Mr. Russo also served the petition on Dale N. Atkins, the Clerk of Civil District Court. Mr. Russo retained private process servers to attempt personal service on Mr. Burns; however, they were unable to complete service. Mr. Russo also had a copy of the petition posted in a “conspicuous” place at Civil District Court for Orleans Parish.
The matter was fixed for trial on September 2, 2014. Mr. Burns complained that he had not been personally served with the petition and had only been advised that the proceedings were pending when his assistant received a call from the trial court. The trial court gave Mr. Burns about fifteen or twenty minutes to review the |spetition. At the start of trial, *70 the plaintiff called several witnesses to discuss service of the petition. Major Martin Blossom, an employee of the Orleans Parish Sheriffs Office, testified that he served the petition on the clerks of court for criminal district court and civil district court. Kasie Marie Chauvin, a private process server, testified that she made seven attempts to serve Mr. Burns at the address provided on his qualifying form, another residence, and his law office. Helen Rose Shear, a law firm employee, stated that she was involved in the filing of the petition and that she saw a member of the Clerk’s office post the petition on a wall near the entrance of the office.
Mr. Russo then testified. He stated that he was registered to vote in Orleans Parish. He also identified the letter that he sent to the Louisiana Department of Revenue that requested Mr. Burns’ tax returns for the years 2008, 2009, 2010, 2011, 2012, and 2013, and the response letter he received. These documents were admitted into evidence.
Testimony and evidence relative to whether Mr. Burns falsely certified that he filed his Louisiana tax returns for the years 2010 through 2013 came from two witnesses. They were Mr. Burns and Bradley S. Blanchard, an attorney and representative from the Louisiana Department of Revenue.
Mr. Burns admitted that he signed the certification notice regarding his tax returns. He maintained that he anticipated that his opponents might make his tax returns an issue; therefore, he instructed his tax preparers to file his returns for the |42010, 2011, 2012, and 2013 tax years.[4] He reiterated that although he did not file the returns himself, at the time of qualifying, he believed that they had been filed by his tax preparers. Mr. Burns thought that the returns had been filed in early August, perhaps, around August 11, 2014.
Mr. Blanchard testified that upon performing a diligent search, the Department of Revenue had no record of receiving individual tax returns from Mr. Burns. He admitted that the public records request was forwarded to him by Mr. Bar-field, the Secretary of the Department, and that the initial request sent to Mr. Barfield was made by Graymond Martin, later identified as an assistant district attorney. The trial court limited Mr. Burns’ request to inquire further into Mr. Martin’s role in the public records request. The trial court indicated that Mr. Martin’s involvement was not relevant because there was no evidence to show that Mr. Martin’s involvement tainted the research results.
The trial recessed at 11:48 a.m. The trial court instructed Mr. Burns to bring any documents he had to support that the tax returns had been filed when court resumed at 1:30 p.m.
When the trial resumed, Mr. Burns provided the court with his copies of records that purportedly showed the tax returns that had been prepared. Plaintiffs counsel examined Mr. Burns as to the validity and reliability of the returns. He argued in part that the returns should not be admitted into evidence because they were hearsay evidence, citing that they did not contain the signature of the tax | ^preparer; and moreover, did not provide any verification that the tax preparer had actually filed the returns. Mr. Burns again acknowledged that he did not file the returns himself; instead, he relied on his belief that his tax preparers had filed the re *71 turns. He eventually identified Monica Jackson as the person who prepared the returns and claimed that he had signed the returns in her office. The returns were admitted into evidence.
The trial court asked Mr. Blanchard to conduct an updated search to see if the Department of Revenue had received Mr. Burns’ tax returns. Upon his return to the stand, Mr. Blanchard testified that he directed his department to do an updated search. However, as of the date of the .trial, it still had no record that Mr. Burns had filed his tax returns for the disputed years.
Mr. Burns requested that he be allowed to call Ms. Jackson as a witness on the following morning. The trial court judge denied the request, explaining that “according to the statute, I have to complete the hearing.” The trial court judge then advised Mr. Burns that what he might want to do is file an objection and make a notation that he would like to proffer Ms. Jackson’s testimony. She surmised that maybe the proffer could go up to the Court of Appeal; however, the trial judge could not consider Ms. Jackson’s testimony at that juncture in the proceedings in making her ruling.
The trial court then rendered judgment in favor of Mr. Russo. The judgment found that Mr. Russo had established a prima facie case that had not been rebutted by Mr. Burns and disqualified him as a candidate.
| fiThis appeal followed.

DISCUSSION

Upon appeal, Mr. Burns assigns as errors that the trial court erred by not continuing the matter when he had not been served with the petition; by not allowing him adequate time and notice to prepare for the trial; by not giving him adequate time and notice for him to secure counsel, witness(es), and gather documentation to carry his burden of proof; in not allowing him to call the Assistant District Attorney Graymond Martin to discuss Martin’s contacts with the Department of Revenue; and in disqualifying Burns when the tax returns he admitted into evidence were sufficient to continue his candidacy in light of case law that supports that doubts as to candidacy should be resolved in favor of candidacy. In support of his appeal, Mr. Burns submitted proffers of an affidavit from Monica Jackson and a certificate of mailing from the United States Postal Office. The appellee filed a motion to strike, contending that these proffers were not properly before this Court because they had not been filed in the trial court record.
Mr. Burns’ assignments of error generally question whether he was properly served with the petition and whether the proceedings below afforded him due process. We find that the record shows that Mr. Burns was properly served with the petition in accordance with La. R.S. 18:1407 and that service of process on his agent gave the trial court jurisdiction over Mr. Burns. See La. R.S. 18:1408(D). 17However, we also find that Mr. Burns’ claims that the proceedings below did not afford him due process have merit.
. The essence of due process is notice and an opportunity to be heard. Darnell v. Alcorn 99-2405, p. 12 (La.App. 4 Cir. 9/24/99), 757 So.2d 716, 723. Here, the evidence that Mr. Burns wanted to elicit from Ms. Jackson-whether she filed his tax return-is material as to whether he falsely certified that he had indeed filed the returns at the time he qualified. Therefore, the denial of his request to call Ms. Jackson clearly prejudiced him in .meeting his burden of proof.
La. C.C.P. articles 1631 and 1632 give the trial court the power over trial *72 proceedings and the order of witnesses; and in general, a trial court’s judgment as to these decisions will not be disturbed in the absence of an abuse of discretion. However, an abuse of discretion occurs when the trial court’s discretion is exercised in such a way that deprives a litigant of his day in court. Anderson v. Cunningham, 34,859, p. 2 (La.App. 2 Cir. 5/9/01), 786 So.2d 940, 942. In the present matter, the record suggests that the trial court denied Mr. Burns’ request to call Ms. Jackson as a witness on the following morning because of the expedited procedures imposed by the Louisiana Election Code as to when the trial court must hear and resolve election suits. Although this Court acknowledges that the Election Code provides for an expedited process, 'it poses no time constraints as to the duration of a hearing, such as to deny a litigant due process.
|sThe trial court’s denial of Mr. Burns’ request to call Ms. Jackson as a witness effectively denied him his day in court. Therefore, the trial court abused its discretion in not allowing Mr. Burns to call Ms. Jackson.
Finding that the trial court abused its discretion, we need not address the issue as to whether the proffers submitted by Mr. Burns are properly before this Court.
Accordingly, based on the foregoing reasons, the decision to disqualify Mr. Burns is vacated and the matter is remanded to the trial court in order to allow Mr. Burns the opportunity to present testimony from Ms. Jackson.
VACATED AND REMANDED.
BELSOME, J., concurs with additional reasons.
BONIN, J., concurs with additional reasons.
McKAY, C.J., dissents.
TOBIAS, J., dissents and assigns reasons.
LANDRIEU, J., dissents with reasons.
LOBRANO, J., dissents for the reasons assigned by Judge TOBIAS and Judge LANDRIEU.

. La. R.S. 18:494 states the effect of sustaining an objection to candidacy as follows:
A. Disqualification. When an objection to candidacy is sustained on the ground that the defendant failed to qualify for the primary election in the manner prescribed by law, that the defendant failed to qualify for the primary election within the time prescribed by law, or that the defendant does not meet the qualifications for the office he seeks, the final judgment shall disqualify the defendant as a candidate in the primary election for the office for which he failed to qualify properly.

.La. R.S. 18': 1407 provides: By filing notice of candidacy a candidate appoints the clerk of court for each parish in which he is to be voted on as his agent for service of process in any action objecting to his candidacy, contesting his qualification as a candidate in a general election, or contesting his election to office.

. Hereinafter, the use of "tax returns” will reference the disputed tax years of 2010, 201 1, 2012, and 2013.