TOBIAS, J.,
dissents and assigns reasons.
hi respectfully dissent. I find that the trial court erred as a matter of law by incorrectly interpreting La. R.S. 18:468. Therefore, contrary to the majority’s argument, the proper standard of review is de novo.
I first note that the appellant, Mr. Russo, did not seek supervisory review from the Supreme Court of this court’s 9 September 2014 decision that remanded this case to the trial court for the testimony of Mr. Burns’ tax preparer. Whether it was proper to remand this election case for further testimony has not been resolved by the Supreme Court in spite of this court’s unique holding that it was proper. I have not been able to locate an election contest case where an appellate court remanded for further evidence, save one case where a remand was granted for the limited purpose to determine whether the appellate court had jurisdiction to even hear the appeal. The statutory procedures were followed to the letter by Mr. Russo and it was totally proper for the court to proceed to trial on 2 September 2014 and require Mr. Burns to present his entire case that day.
Second, the additional evidence produced by Mr. Burns at the remand does not address the ultimate issue in this case, to-wit, did Mr. Burns file his tax returns. This issue is addressed further infra. Mr. Burns has omitted significant evidence in |2support of his position. See Russo v. Bums, 14-0952 (La.App. 4 Cir. 9/9/14), 150 So.3d 67, 72-75, 2014 WL 4636409 (Tobias, J. dissenting.[1])
*384 |sAt the remanded hearing, Monica Jackson, who prepared Mr. Burns’ tax returns, testified that she could not remember who, less than a month earlier, had actually mailed the envelope containing his returns. She testified that she drove to the post office in uptown New Orleans with another person, who she did not recall, to affect mailing. She blamed her lack of memory of various issues on her diabetes and use of insulin to control it. In addition, it strains credibility to accept her testimony that the tax returns were actually mailed uptown, when Mr. Burns went to her home in LaPlace on 14 August 2014 to sign those returns, in light of the necessity to have them filed before 20 August 2014, the date on which Mr. Burns signed his notice of candidacy. The certificate of mailing produced by Ms. Jackson did not contain the amount of postal fee paid for the certificate of mailing |4despite the place on the certificate where such a notation was to be made. Therefore, in my opinion, little weight, if any, can be given to her testimony.
This discrepancy was made even more apparent when compared to the two certificates of mailing produced by a paralegal, who worked for the plaintiffs counsel, who mailed two separate envelopes at the same uptown post office the day before the hearing. Both of those certificates indicated the amount of postal fee for the certificate of mailing paid on their face. See Mailing Standards of the U.S.P.S., Domestic Mail Manual 503.5.1.1 through 503.5.1.4.
Now, Mr. Burns, as echoed by the majority, argues that the trial court made certain credibility determinations before rendering its decision, thereby creating a manifest error/clearly wrong standard of review. However, nowhere in the opinion does the trial court make any credibility determinations. In fact, the trial court acknowledges “that the testimony [subjective at best] and the exhibits [objective] differ significantly.” [Emphasis supplied.] In addition, as quoted infra, the trial court never holds the evidence “proves” that Mr. Burns carried his burden of proof; merely that it is “suggested” that he did so.
La. R.S. 18:463 states in pertinent part: A. (l)(a) A notice of candidacy shall be in writing and shall state the candidate’s name, the office he seeks, the address of his domicile, and the parish, ward, and precinct where he is registered to vote. The candidate shall list on the notice of candidacy the name of the political party if he is registered as being affiliated with a recognized political party, “other” if he is registered as being affiliated with a political party that is not a recognized political party, or “no party” or an abbreviation thereof if he is registered with no political party affiliation. No candidate shall change or add his political party designation, for purposes of printing on the election ballot as required by R.S. 18:551(D), after he has qualified for the election.
(b) The candidate shall designate in the notice the form in which his name shall *385 be printed on the ballot. The candidate may designate his given, first, and middle name, the initials of his given, first, and middle name, a |finickname, or any combination thereof as the form in which his name shall be printed on the ballot, but he shall not designate a title, designation, or deceptive name, nor shall he designate an occupational or professional description or abbreviation. If the candidate designates a nickname in place of or in combination with his given name or the initials thereof, the nickname shall be set off with quotation marks and shall be placed immediately preceding his surname. A candidate shall include his surname in his designation of the form in which his name shall be printed on the ballot.
[[Image here]]
(2)(a) The notice of candidacy also shall include a certificate, signed by the candidate, certifying all of the following:
[[Image here]]
(iv) Except for a candidate for United States senator or representative in congress, that for each of the previous five tax years, he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or state income tax return or both, or was not required to file either a federal or state income tax return or both.
[[Image here]]
(viii) That all of the statements contained in it are true and correct.
[Emphasis supplied.]
In this matter, the trial court held:
Thus, the facts presented to this court suggest that when Mr. Burns qualified for office, he certified to the best of his knowledge, that he had in fact filed his taxes. Mr. Burns has submitted sufficient evidence to rebut the prima facia case established by the plaintiff. [Emphasis supplied.]
This ruling is incorrect for two reasons.
First, although it is true, as a general matter, that the law favors candidacy, those cases clarify that once an objector makes a prima facie showing (as was done here), the burden shifts to the defendant to rebut that showing. Landiak v. Richmond, 05-0758, p. 8 (La.3/24/05), 899 So.2d 535, 542; Louisiana State Board of Ethics v. Garrett, 06-0263, p. 8 (La.App. 4 Cir. 3/21/06), 929 So.2d 176, 180_£81.6 Absent rebuttal, the objection to candidacy must be sustained. See Garrett, p. 10, 929 So.2d at 181-182.
In the instant case, the plaintiff proved that as of 2 September 2014, Mr. Burns’ tax returns for years 2010-2013 had not been filed with the Louisiana Department of Revenue (“LDR”). The burden then shifted to Mr. Burns to prove, not suggest, that the returns had been received by the LDR.
Pursuant to the La. Admin. Code title 61, pt. I, § 4911(B)(1):
B. File Date of a Return, Report and Other Document
1. Delivery by the United States Postal Service. A return, report or other document in a properly addressed envelope with sufficient postage delivered by the United States Postal Service is deemed filed on the date postmarked by the United States Postal Service. The postmark must bear a date on or before the last date prescribed for filing the return, report or other document in order to be considered timely filed. If the postmark on the envelope is not legible, the taxpayer has the burden of proving the date that the postmark was made. If the return, *386 report or other document is sent by United States registered or certified mail, , the date of registration is treated as the date of postmark. A postage meter date is considered a valid postmark date provided it does not conflict with a legible United States Postal Service postmark date. If the dates conflict, the United States Postal Service date shall override the meter date.
In this case, Mr. Burns did not objectively prove (as acknowledged by the trial court) that his tax returns had been mailed. In addition, Mr. Burns did not supply, or even proffer, evidence, that his tax returns had been received by the LDR between the initial hearing on 2 September 2014 and the subsequent hearing nine days later; thus, he did not demonstrate that the returns were actually filed under the law. I, therefore, disagree as a matter of law with the trial court that Mr. Burns submitted sufficient evidence to rebut the prima facia case established by the plaintiff.
Second, the notice of candidacy and La. R.S. 18:463 require the candidate to sign the notice certifying “[t]hat all of the statements contained in it are true and 17correct,” not true and correct to the best of his/her knowledge. This holding creates a subjective standard on the part of the candidate. If, as asserted by Mr. Burns, all the candidate would have to prove is “good faith” or “the best of [one’s] knowledge” and belief, election disputes would require lengthy evidentiary processes to prove that the candidate was not in good faith when he/she signed the notice of candidacy. A challenger would have an almost impossible task to disqualify a candidate for office in the limited timeframe for election challenges. This is not what the statute states, contemplates, or requires.
As stated by the Supreme Court in Benjamin v. Zeichner, 12-1763, pp. 5-6 (La.4/5/13), 113 So.3d 197, 202:
The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. Further, the legislature is presumed to act with full knowledge of well-settled principles of statutory construction. [Footnote omitted.]
Here, the language of La. R.S. 18:463 is clear and unambiguous. It creates an objective test: were Mr. Burns’ tax returns filed, either by objective proof of mailing or actual delivery to the LDR, on 20 August 2014 when he signed the notice of candidacy to run for district attorney. The answer to that question is an unequivocal “No.”
Therefore, I would reverse the district court and hold that Mr. Burns is disqualified as a candidate for the office of Orleans Parish District Attorney.

. The dissent reads in pertinent part as follows:
I find the majority errs by granting a remand in this case.
[[Image here]]
After the trial began, the trial court granted Mr. Burns’ request for a recess in order to obtain copies of his 2010-2013 tax returns from his Algiers office. Approximately an hour and forty-five minutes later, Mr. Burns presented tax returns bearing original signatures of himself and his tax preparer dated 14 August 2014. These tax returns appear in the record on appeal. Mr. Burns does not clearly explain how he possessed original tax returns; he seems to say that he signed two copies of each of his tax returns, left one with the tax preparer for mailing, and kept one with the cover letter *383 of transmittal to him dated 11 August 2014 for his records.
I do not find erroneous the trial judge's conclusions that Mr. Burns' candidacy must be stricken and that he is disqualified to run for the office of district attorney. The trial judge implicitly concluded that Mr. Burns did not file his state income tax returns before he qualified for office on 20 August 2014. The finding is not manifestly erroneous or clearly wrong. If, as Mr. Burns contended in the trial court that his tax preparer mailed the returns on 14 August 2014 k the returns clearly had not been received by the Louisiana Department of Revenue ("LDR”) by 29 August 2014 or during the 2 September 2014 trial, when the LDR witness was testifying I do not find it credible that he relied upon his tax preparer (as he testified) to timely mail the returns given the exigent circumstances.
I would reject the proffers of Mr. Burns and strike them as the appellees have so moved. He did not file the proffers in the trial court and they do not form a part of the record on appeal. No law or rule of court permits proffers to be filed in the first instance in an appellate court. Therefore, unlike the majority, I would not consider anything in the proffers.
If I were to consider the proffers, however, I note the following matters which make them questionable and unreliable.
Mr. Burns’ appellate brief was to be filed in this court by 1:00 p.m. on 5 September 2014. On 5 September 2014, he filed a motion requesting an extension of time to file his appellate brief later that day; the extension was granted. He delivered with his motion two proffers: (1) a purported affidavit of his tax return preparer (Monica Jackson, whose tax preparing service, "Error Proof Tax Service,” is apparently located somewhere west of New Orleans, such as LaPlace or Kenner, Louisiana), stating that she mailed his four state tax returns to the LDR on 15 August 2014: and (2) a U.S. Postal Service certificate of mailing with a cancellation stamp/postmark from a branch post office in uptown New Orleans (zip code 70115) bearing the date of 15 August 2014.
This first purported original affidavit dated 5 September 2014 does not bear the signature of the tax preparer, Ms. Jackson; it is signed by two witnesses and the notary public only. Later on 5 September 2014, Mr. Burns filed a motion to supplement the record to replace the first purported affidavit. The second affidavit bears the signature of his tax preparer, Ms. Jackson. A comparison of the first purported affidavit with the second affidavit strongly suggests that the notary public and witnesses signed the document prior to the affiant and were not present when Ms. Jackson signed.[1] The signatures of the notary public and witnesses are identical in every respect whatsoever, including and even to the extent that the signature of the notary public crosses the handwritten number “5” in the date of the jurat at the precise same place. The handwritten word "September” in both jurats is distinctively identical with an imperfection in the "ep” of the word "September.” I do not pi dee much credence or credibility in the second affidavit presented to this court on 5 September 2014. I would, therefore, reject this proffer.
The certificate of mailing is questionable. The certificate of mailing has no postage affixed as the certificate itself says should be and I wonder why a tax preparer would mail a letter in uptown New Orleans when her office is in Kenner and, as stated by Mr. Burns in oral argument, she resides in La-Place. I would reject the proffer.
Mr. Burns statements about being unprepared ring hollow. Mr. Burns testified that he was unprepared for the 2 September 2014 trial because he did not know until that morning that a chállenge to his candidacy had been filed by Mr. Russo. He asserts various versions of his actions over the preceding Labor Day weekend: that he was in Atlanta, Georgia visiting his minor son over the Labor Day weekend (29 August through 1 September); that he was halfway to Georgia and had to turn back because of this election contest; that he was at his 5740 Eastover Drive home (where service of the petition and citation was attempted three times) several, times over the Labor Day weekend, which he later modified to say that he was there only for about five minutes early Saturday morning, 30 August 2014. Mr. Burns’ credibility is obviously suspect in these regards.
The trial judge was under statutory item restraints to begin the trial of the case, and refused to recess the trial for yet a second time to permit Mr. Bums to bring his tax preparer into court the following day to testify that she mailed the tax returns prior *384 to 20 August 2014 (the day Mr. Burns qualified for office with the clerk of court). I cannot say that the trial judge abused her discretion in refusing to entertain the second recess; it is apparent from the testimony the judge heard and evidence presented that the judge did not believe Mr. Burns.
Our statutory expedited procedures to challenge candidacy have been adhered to by the trial court. I do not find a remand in order. I would affirm the judgment of the trial court.
Further, Mr. Burns moved and the trial court granted a stay of her 3 September 2014 judgment. No law permits the granting of a stay in an election contest. I would order the stay entered by the trial court vacated.

. See Russo v. Bums, 14-952 (La.App. 4 Cir. 9/9/14), 150 So.3d 67, 2014 WL 4636409 (Belsome, J., concurring).